IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DARREL A. WHITE, | ) | Civil Action No. 7:10-cv-00514 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| OFFICER M. OWENS, <u>et al.</u>, | ) | By:   Hon. Michael F. Urbanski |
|     Defendants. | ) |        United States District Judge |

Darrel A. White, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants: Warden Bryan Watson of the Virginia Department of Corrections' ("VDOC") Wallens Ridge State Prison ("WARSP"); WARSP correctional officers M. Owens and Captain Anderson; and Nurse Harber. Nurse Harber filed a motion to dismiss, and the other defendants and plaintiff filed motions for summary judgment. After reviewing the record,[1] the court grants Nurse Harber's motion to dismiss and Watson and Anderson's motion for summary judgment but denies plaintiff's and Owens' motions for summary judgment.

I.

On November 11, 2009, at approximately 9:05 a.m., WARSP correctional officers Owens and Berry escorted plaintiff from the shower to his cell. When they arrived at his cell, the officers ordered plaintiff to kneel inside his cell so they could remove his leg irons. White complied and kneeled in his cell with his back toward the officers. Plaintiff avers that after he

---

[1] Defendants filed, and the court reviewed, two videos: a pre-incident video from a pod security camera and a post-incident video from a hand-held camera. The pre-incident video shows Owens and Berry escorting plaintiff from the shower to his cell, but it cannot see inside plaintiff's cell and lacked sufficient clarity to detail the incident. The post-incident video follows Sgt. Greer as he arrives at the scene after Berry and Owens already had plaintiff secured to the floor. It also shows plaintiff being escorted to the pod tables, Nurse Harber's assessment, and plaintiff's delivery back to his cell.

1

kneeled in the cell, Owens pulled plaintiff's legs out from underneath him and began to beat him, blackening his left eye and cutting the inside left part of his upper lip.

However, Owens and Berry aver that plaintiff kicked Owens in the chest, causing Owens to fall backwards, after he removed a leg iron from one of plaintiff's legs. Owens stood up and helped Berry pin plaintiff against the floor and apply restraints. Sergeant Greer avers that when he arrived at the cell, he saw Owens and Berry restraining plaintiff on the floor, heard plaintiff apologize for kicking Owens, and saw a partial, dirty footprint on Owens' chest.

Nurse Harber assessed plaintiff for injuries, noting an "edematous" left eye that was reactive to light and not draining plus a one-quarter centimeter "broken area" on plaintiff's lower-inner lip that was not bleeding.[2] Harber did not note any edema or redness on plaintiff's hand or head, and plaintiff could move his right hand without any sign of injury or trauma. Nurse Harber subsequently assessed Owens and noted area of redness in the area where plaintiff allegedly kicked him.

Owens filed an institutional charge of "Simple Assault on a Non-Offender" against plaintiff. Plaintiff pleaded guilty to the offense and accepted a $5.00 penalty offer. He appealed because he allegedly was forced to accept the penalty offer, but the conviction was affirmed.

Plaintiff argues in his complaint and amendments that Owens used excessive force, in violation of the Eighth Amendment, and committed assault and battery, in violation of Virginia law, by beating him in his cell. Warden Watson is allegedly liable because he is the WARSP Warden and allegedly knew of Owens' propensity for violence. Capt. Anderson is allegedly liable because he is a superior officer and took pictures of plaintiff's face after the incident. Nurse Harber is allegedly liable because she did not provide adequate medical treatment, which

---

[2] Plaintiff alleges Nurse Harber falsified his medical record because his upper lip was injured, not the lower lip.

constitutes deliberate indifference, and falsified plaintiff's medical record. Plaintiff requests as relief damages of $350,000.

II.

A.　Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor

make determinations of credibility, <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." <u>Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 62 (4th Cir. 1995). Moreover, a plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. <u>See Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); <u>Barclay White Skanska, Inc. v. Battelle Mem'l Inst.</u>, 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted <u>Gilmour</u>).

B.  THE DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY IN THEIR OFFICIAL CAPACITIES FOR DAMAGES.

Defendants argue that they are immune from damages in their official capacities. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983 damages actions. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70-71, n.10 (1989).

Accordingly, each defendant is immune to the extent that plaintiff is suing a defendant in an official capacity for damages.

C.     WARDEN WATSON, CAPTAIN ANDERSON, AND NURSE HARBER ARE ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S CONSTITUTIONAL CLAIMS.

Plaintiff also accuses the defendants in their personal capacities, and the defendants assert the defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)). A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

1. Plaintiff fails to establish that Warden Watson and Captain Anderson violated one of plaintiff's constitutional rights.

Plaintiff argues that Warden Watson violated a constitutional right because, "being the [Warden], he had done nothing to correct the situation and being the [Warden] he had knowledge of and was deliberately indifferent to the substantial risk of harm pose[d] by C/O Ow[en]s['] tendency to use excessive force and he s[aw] my face and talk[ed] to me on November 14, 2009." (Second Amendment (no. 20) 1.) Capt. Anderson is allegedly responsible because he was Owen's supervisor and "had knowledge of the substantial risks of harm to [p]laintiff and[,] being the prison Capt[ain,] he had knowledge of this situation because he was the one call[ed] to the [pod] and he took pictures of [plaintiff's] face and that is how he is deliberately indifferent to the substantial risk of harm pose[d] by C/O Ow[en]s['] tendency to use excessive force." (Id.)

Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). Beyond plaintiff's bare accusation that Watson and Anderson knew of an unspecified potential for harm, plaintiff fails to describe any fact to establish that Watson or Anderson knew of the potential use of force before the incident happened. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that a complaint needs sufficient factual allegations to raise a right to relief above the speculative level and requires more than labels and conclusions). Accordingly, Watson and Anderson are entitled to qualified immunity because plaintiff failed to establish that they violated a constitutional right.

2. Plaintiff fails to establish that Nurse Harber violated one of plaintiff's constitutional rights.

Plaintiff claims that Harber was deliberately indifferent to his serious medical needs following the incident because she treated him in the pod and did not transfer him to the medical department or to a hospital. Plaintiff must show that Harber acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for insufficient medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). The prisoner must show that a defendant's action was "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. 105-06. See Sosebee, 797 F.2d at 181; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). A medical need serious enough to give rise to a constitutional claim involves a condition that places the

inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

Even assuming, arguendo, that plaintiff's cut inside lip, bruised hand, and swollen eye were serious medical injuries, plaintiff cannot establish Harber's deliberate indifference. The post-incident video recording establishes that Harber assessed plaintiff inside the pod minutes after the incident occurred. She asked plaintiff what needed to be checked, he responded, and she examined the inside of his mouth, right hand, scalp, and eyes. Harber did not request plaintiff to be transported to the medical department or to a hospital, and staff escorted plaintiff back to his cell. Plaintiff merely alleges that Harber "fail[ed] to get [him] adequate medical help" because she "did not have plaintiff []moved from t[he] pod to [the] medical [department] or to a hospital to be checked out." (Second Amendment 2.) Plaintiff's disagreement about Nurse Harber's treatment also does not implicate the Eighth Amendment. Accordingly, plaintiff fails to establish an Eighth Amendment claim against Nurse Harber, and she is entitled to qualified immunity.

3. A dispute of material fact precludes Owens from receiving qualified immunity.

At the time of the incident, the law was clearly established that a correctional officer may not inflict unnecessary and wanton pain and suffering on a prisoner. Whitley v. Albers, 475 U.S. 312, 320 (1986). See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Whether an officer used excessive force in violation of the Eight Amendment depends on the force applied being "a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The subjective component encompasses "such factors as the need for the application of force, the relationship between the

need and the amount of force that was used, and the extent of injury inflicted." Id. at 321 (internal quotation marks, alterations, and citation omitted). The objective element generally requires more than a de minimis use of force. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). See Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175 (Feb. 22, 2010) (stating that an inmate's extent of injury is a relevant factor to an Eighth Amendment claim).

Plaintiff alleges that as he was fully restrained and kneeling in his cell with his back to Owens, Owens pulled plaintiff's legs out from underneath him and began beating him, causing a black eye and an interior cut of his lip. Such an attack would state a claim of excessive force because the force would have been applied in good-faith since Owens had plaintiff helplessly restrained and kneeling. Although the injuries may not be serious, they could evince an unnecessary and wanton infliction of pain not justified by the described events. See Wilkins, 130 S. Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Owens and Berry aver that plaintiff kicked Owens backwards after they escorted him from the shower and removed a leg-iron. That allegation would be a sufficient basis to restrain plaintiff by pinning him to the floor to prevent another attack. While any injury would be regrettable, it could be a result of a good-faith effort to restore and maintain security.

Summary judgment based upon qualified immunity is inappropriate "where what actually happened . . . need[s] to be resolved by the trier of fact in order to reach a decision on the applicability of qualified immunity." Lowery v. Stovall, 92 F.3d 219, 222 (4th Cir. 1996) (quoting Rainey v. Conerly, 973 F.2d 321, 324 (4th Cir. 1992)). If the trier of fact finds that Owens used excessive force, then it could not be said that it was "objectively reasonable" for Owens to believe that his actions did not violate the plaintiff's constitutional rights. After

viewing the evidence in the light more favorable to the plaintiff, the court concludes that sufficient evidence exists to raise a genuine issue of material fact as to whether Owens used excessive force, and summary judgment must be denied.  See Johnson v. Jones, 515 U.S. 304, 313, 319-20 (1995) (holding that a district court's denial of summary judgment because of a genuine issue of material fact is not a "final decision").

D.     PLAINTIFF'S STATE LAW CLAIMS

   1.     Plaintiff cannot succeed on his medical claims against Nurse Harber.

Plaintiff complains that Harber falsified his medical record and did not refer him to a hospital or to the medical treatment for observation or further, unspecified treatment.  To prove negligence under Virginia law, a plaintiff must (1) identify a legal duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to the plaintiff (4) proximately caused by the breach.  Talley v. Danek Med. Inc., 179 F.3d 154, 157 (4th Cir. 1999).  In Virginia, a party alleging medical malpractice must also obtain an expert certification of merit before serving the defendant, pursuant to the Virginia Medical Malpractice Act ("VMMA").  VA. CODE § 8.01-20.1.  Cf. Parker v. United States, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007) (stating that a federal tort claim of medical malpractice claim is subject to the VMMA expert certification of merit requirement).  The VMMA provides an exception to the certification requirement when expert certification is unnecessary "if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the [factfinder's] common knowledge and experience."  VA. CODE § 8.01-20.1.  See Beverly Enterprises-Va., Inc. v. Nichols, 247 Va. 264, 267, 441 S.E.2d 1, 2 (1994) (noting that the exception applies only in "rare instances" because only rarely do the alleged acts of medical negligence fall within the range of a factfinder's common knowledge and experience).  "Where . . . a plaintiff 'calls into question' a

'quintessential professional medical judgment,' the matter 'can be resolved only by reference to expert opinion testimony.'" Parker, 475 F. Supp. 2d at 597 (quoting Callahan v. Cho, 437 F. Supp. 2d 557, 563 (E.D. Va. 2006)).

In this case, plaintiff does not have the required certification; instead, plaintiff argues that a lay person would be able to assess whether or not Nurse Harber's treatment of his injuries was adequate and whether the wounds could properly be treated in the pod instead of at the medical department or a hospital. A lay person would most likely conclude that a hand that does not exhibit any injury, swollen eye lids on one eye, and a small cut that was not bleeding does not require a referral to a hospital or a prison's medical department. A lay person would lack the medical knowledge to know of a specific medical reason why a referral would be necessary in this situation. Accordingly, plaintiff is not relieved from the medical certification requirement of the VMMA, he fails to provide that certification, and his medical claim is dismissed.

Plaintiff also alleges that Harber falsified his medical record by stating that she actually saw him for a small cut to his lower-inner lip but that she noted in his medical record that he had a small cut to the upper-inner lip. However, plaintiff fails to describe any proximate injury from the alleged mistake on his medical record. Accordingly, this false record claim is dismissed.

2. A dispute of material fact precludes summary judgment for plaintiff's claims against Owens for assault and battery.

In Virginia, "a common law assault, whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (2005). The intent to harm may be ascertained by the circumstances of the offense, including the actor's words and conduct. Commonwealth v. Vaughn, 263 Va. 31, 36, 557 S.E.2d 220, 223 (2002). A battery under Virginia law is a non-

consensual touching of another, however slight. Pugsley v. Privette, 220 Va. 892, 899, 263 S.E.2d 69, 74 (1980).

A Virginia law enforcement officer enjoys "special protection" from tort liability when performing official duties in a lawful manner. See Mercer v. Commonwealth, 150 Va. 588, 599, 142 S.E. 369, 372 (1928). ("[A]s an officer, he has an affirmative duty to perform, and in the performance thereof he should, so long as he keeps within due bounds, be protected."). Thus, either an assault or battery is permitted when justified in the performance of a law enforcement officer's duties. See Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009) ("Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties."). But see Gnadt v. Commonwealth, 27 Va. App. 148, 151, 497 S.E.2d 887, 888 (Va. App. Ct. 1998) ("[A]n arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful.").

For reasons similar to the disposition of plaintiff's excessive force claim, a dispute of material fact exists whether Owens justifiably used force against plaintiff in response to an attack or whether he struck plaintiff for the purpose of causing harm. Accordingly, the court denies summary judgment on plaintiff's state law claims of assault and battery.

III.

For the foregoing reasons, the court grants Nurse Harber's motion to dismiss and Watson and Anderson's motion for summary judgment. The court denies Owens' and plaintiff's motions for summary judgment. The Clerk shall set this matter for a seven-member jury trial in the Big Stone Gap Division for plaintiff's remaining claims against Owens for excessive force, in violation of the Eighth Amendment, and assault and battery, in violation of Virginia law.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

    Entered: August 19, 2011

    */s/ Michael F. Urbanski*

    Michael F. Urbanski
    United States District Judge