IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DARREL A. WHITE,** | ) | Civil Action No. 7:10-cv-00514 |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **OFFICER M. OWENS, et al.,** | ) | By:   Hon. Michael F. Urbanski |
|     **Defendants.** | ) |         United States District Judge |

Darrel A. White, a Virginia prisoner proceeding pro se, filed a civil rights complaint alleging that defendant M. Owens, a correctional officer, used excessive force in violation of the Eighth Amendment of the United States Constitution and committed assault and battery in violation of Virginia law in an incident occurring at Wallens Ridge State Prison. At a jury trial held February 1, 2012, the jury found in Owens' favor on all claims. Presently before the court is White's "Motion to set aside verdict and grant new trial." (Dkt. # 168.) As there is no basis upon which to set aside the jury's verdict or grant a new trial, White's Motion is **DENIED**.

I.

On November 11, 2009, correctional officers Owens and Tony Berry escorted plaintiff to his cell from the prison shower. When they arrived at plaintiff's cell, the officers ordered White to kneel inside the cell so they could remove his leg shackles and handcuffs. White claims that after he complied, Owens pulled his legs out from under him and began to beat him, causing a black eye and a cut on his lip. In sharp contrast, Owens and Berry testified that after Owens removed a shackle from White's left leg, White kicked backwards, striking Owens in the chest and knocking him down. The force of the kick propelled White forward and onto the floor. Owens and Berry acted to restrain White, but denied that any beating occurred. Arriving on the scene shortly thereafter, Sgt. David Greer observed a footprint mark on the front of Owens' shirt.

Nurse Harber testified that she examined both White and Owens for injuries after the incident and observed that White's left eye was swollen and inner lip was cut. She also observed a footprint-sized red area on Owens' chest. As a result of the incident, White was charged with a disciplinary offense, simple assault, for kicking Owens in the chest.[1]

At trial, White called three inmate witnesses and testified himself at length. Defendant called a hearing officer at Wallens Ridge concerning the disciplinary hearing process and White's acceptance of the penalty offer and guilty plea to the institutional assault charge. Owens testified in his defense and called as witnesses former correctional officer Berry, Sgt. Greer and Nurse Harber. After conclusion of the evidence, the jury indicated on a special verdict form that White failed to prove that Owens used excessive force or committed assault and battery.

In his post-trial motion, White disagrees with the jury verdict and asks the court to enter judgment in his favor and reconvene the jury to determine damages, or to order a new trial. White raises a number of arguments in support of this motion: (1) the jury failed to consider the evidence in a light most favorable to him, erroneously citing the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963); (2) the evidence did not support the jury verdict; (3) the jury unfairly weighed his testimony because he is a prisoner and not from the local community; (4) the jurors were biased, having friends or relatives who are correctional employees; and (5) the venire was not a fair cross-section of the community because White is African American and there were no African Americans in the jury pool.

---

[1] White accepted a penalty offer and pled guilty to the institutional charge but claimed at trial that he was forced to plead guilty or would be subjected to additional beatings.

**II.**

The court liberally construes White's motion as a motion for judgment as a matter of law via Rule 50(b), a motion for a new trial via Rule 59(a), and a motion to alter or amend the judgment via Rule 59(e) of the Federal Rules of Civil Procedure.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (describing liberal construction of pro se pleadings).  Different standards apply under each of these rules, but, for the following reasons, White fails to establish any basis upon which to invalidate the jury verdict.

      A.      <u>White is not entitled to judgment as a matter of law under Rule 50(b).</u>

The court must grant judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue.  Fed. R. Civ. P. 50(a)(1). The court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party, Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir. 2001), and may not substitute its judgment for that of the jury or make credibility determinations, Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996).  The verdict must be upheld if there is evidence on which a reasonable jury could return a verdict in favor of the nonmoving party.  Price, 93 F.3d at 1249-50.

A party must request judgment as a matter of law, pursuant to Rule 50(a), before the case is submitted to the jury, and that party may renew the motion, pursuant to Rule 50(b), if the court denies the Rule 50(a) motion and the jury finds adversely to the movant.  White did not request judgment as a matter of law before the case was submitted to the jury, and, thus, he may not now request judgment as a matter of law after trial.  See Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1300 (11th Cir. 2002) (requiring a Rule 50(a) motion before a court can consider a Rule 50(b) motion); Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir.

1995) ("As the name implies, a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is bounded by the movant's earlier Rule 50(a) motion."). Nonetheless, even had White properly requested judgment as a matter of law, the evidence and reasonable inferences therefrom preclude judgment as a matter of law for White.

In his case in chief, White testified that there was no way he could have kicked Owens and that Owens beat him. Two of White's witnesses, inmates Sellers and Smith, were unable to testify as to the incident,[2] but each stated that they later saw White's swollen eye and bruised face. White's third witness, inmate Eddie Ingram, testified that after Owens took one of White's leg shackles off, he saw White fall forward. At that time, White's hands were handcuffed behind his back. Ingram stated that Officer Berry was in the doorway to White's cell partially blocking his view, and that he did not know what caused White to fall forward. Ingram stated that he saw Owens hit White a couple of times, and that there was no way for White to fight back.

Owens' evidence included his testimony and that of former correctional officer Berry that plaintiff kicked Owens in the chest. Berry testified that he took White to the concrete floor after White kicked Owens and that White's face hit the floor as he was being restrained. Both Berry and Owens denied striking White. Sgt. Greer testified that he saw a footprint on Owens' shirt immediately after the incident, and Nurse Harber testified that she saw a footprint-sized red area on Owens' chest soon after the incident.

It is clear that the jury chose to believe Owens and Berry's account of the events. The evidence introduced at trial supports the jury's conclusion that the use of force was a good faith effort to regain control over White, who had just kicked Owens, and that the use of force was not more than reasonably necessary from the perspective of a reasonably prudent officer acting under the same or similar conditions. See Whitley v. Albers, 475 U.S. 312, 320 (1986) (holding

4

that an Eighth Amendment excessive force claim depends on the force applied being a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm); Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009) (recognizing that law enforcement officers are legally justified in using reasonable force to execute their lawful duties). The evidence adduced at trial was more than sufficient to support the jury verdict. Accordingly, White is not entitled to judgment as a matter of law because evidence exists on which a reasonable jury could return a verdict in Owens' favor.

      B.     Plaintiff is not entitled to a new trial under Rule 59(a).

A court may set aside a jury's verdict and order a new trial if the evidence does not support the verdict. Fed. R. Civ. P. 59(a). Specifically, if the court "finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, [t]he [trial judge] must set aside the verdict, even if supported by substantial evidence, and grant a new trial." Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995). In contrast to a Rule 50 motion for judgment as a matter of law, a court may weigh the evidence and judge witnesses' credibility to adjudicate a Rule 59(a) motion for a new trial. Knussman v. Maryland, 272 F.3d 625, 647 (4th Cir. 2001).

White is not entitled to a new trial pursuant to Rule 59(a) because the evidence clearly supported the jury's verdict. The testimony of the defense witnesses supports the jury's conclusion that the reaction of the correctional officers was a good faith, reasonable use of force to restore order. Berry, who no longer works for the Virginia Department of Corrections and credibly testified as an eyewitness, clearly refuted plaintiff's version of events. Berry testified that he stood behind and to the right of plaintiff and saw Owens kneel behind and to the left of plaintiff, remove the left-leg shackle, and be kicked in the chest by plaintiff. Berry further

---

[2] Sellers testified that he was asleep at the time, and Smith stated that he did not remember too much.

explained that plaintiff fell face first toward the concrete floor as a result of White kicking backwards from his kneeling position.  Berry, a physically large man, testified that he placed White on the floor and restrained him there.  Berry refuted White's allegation that Owens punched White or pulled his legs out from under him.  The facial injuries shown in White's photos were consistent with his face hitting the concrete floor after Berry took White to the floor to regain control over him.

Two of White's inmate witnesses, Sellers and Smith, did not witness the incident, although each testified as to the condition of White's face following the incident.  White's third witness, Ingram, said he saw White fall forward with one shackle off, although he could not say why.  Ingram said he saw Owens hit White, but it is obvious that the jury did not credit his testimony.  White also raised issues concerning timing and other discrepancies in the inmate disciplinary documents, claiming that they established that there was a conspiracy to cover up the assault.  Plainly, the jury did not accord these relatively minor discrepancies the weight White assigned to them, and chose to believe the correctional officer's account of the events.  Based on the evidence received, there is no basis upon which the court could conclude that the verdict was against the clear weight of the evidence.  Indeed, the jury's conclusions were fully supported by the evidence.  Accordingly, the court will not order a new trial.

    C.    <u>There is no basis to otherwise alter or amend the judgment under Rule 59(e).</u>

A court may alter or amend a judgment in the case of a clear error of law or to prevent manifest injustice.  See <u>EEOC v. Lockheed Martin Corp.</u>, 116 F.3d 110, 112 (4th Cir. 1997) (permitting a Rule 59(e) motion to alter or amend a judgment to accommodate an intervening change in controlling law; to account for new evidence not available at trial; or to correct a clear error of law or prevent manifest injustice).  None occurred here.  White argues that the jury

somehow violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to consider the evidence in a light most favorable to him. White also argues that manifest injustice occurred because the jury was biased against him.

Plaintiff's reliance on Brady v. Maryland is misplaced. The United States Supreme Court held in Brady that "when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'" Cone v. Bell, ___ U.S. ___, 129 S. Ct. 1769, 1772 (2009) (quoting Brady, 373 U.S. at 87). Not only is Brady inapplicable to this civil case, there is no hint that any evidence was suppressed or due process violated in this case. White had a full and fair opportunity to present his case to the jury. They simply chose not to agree with him.

Plaintiff's generalized and speculative allegation of juror bias in favor of correctional officers or persons outside the community has no merit. The "touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equip. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). To obtain a new trial for juror bias, a party must demonstrate (1) that a juror failed to answer honestly a material question during voir dire, and (2) that a correct response would have provided the basis for a successful challenge for cause. McDonough Power Equip., 464 U.S. at 556. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." Id.

White fails to establish that any juror concealed a personal bias or that any such bias existed. The jury pool was specifically questioned about any relationship to correctional officers and inmates and their answers were both candid and forthright. White had ample opportunity to

7

conduct voir dire and observe the responses of the jurors. To be sure, several members of the jury pool indicated that they knew or were related to correctional workers and/or inmates. Each side had a full and fair opportunity to explore these disclosed relationships. Based on the voir dire, the court struck four jurors for cause, and White used eight preemptory challenges to strike jurors of his choosing. The court charged the jury concerning their duty to decide the facts without regard to personal beliefs, personal relationships, or plaintiff's status as a prisoner. There is no reason to believe that the jury did not follow the court's instructions. The jury paid careful attention to the evidence and rendered a verdict consistent with that evidence. White's generalized allegations of juror bias lack any foundation in the record.

  White fares no better on his post-verdict challenge to the racial composition of the venire. Purposeful racial discrimination in the selection of a venire violates the constitutional right to equal protection. Batson v. Kentucky, 476 U.S. 79, 86 (1986). To establish a prima facie equal protection violation as to the racial composition of the venire, a plaintiff must show that (1) African Americans are "a recognizable, distinct class, singled out for different treatment;" (2) African Americans were substantially underrepresented in jury pools over a significant period of time; and (3) the jury selection process is susceptible of abuse or is not racially neutral. Castaneda v. Partida, 430 U.S. 482, 494 (1977).

  Plaintiff may also challenge the jury venire via the Jury Selection and Service Act of 1968 ("the Act"), 28 U.S.C. § 1861 et seq. The Act guarantees that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. To challenge the jury selection process, plaintiff must file a motion "containing a sworn statement of facts which, if true, would constitute a substantial

failure to comply with the provisions of [the Act]. . . ." 28 U.S.C. § 1867(d). Plaintiff must also have, "before the voir dire examination beg[an], or within seven days after the party discovered or could have discovered[] by the exercise of diligence[] the grounds therefor, whichever is earlier, . . . move[d] to stay the proceedings on the ground of substantial failure to comply with the provisions of [the Act] in selecting the . . . jury." Id. at § 1867(c). These steps are the "exclusive means by which . . . a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of [the Act]. . . ." Id. at § 1867(e).

Plaintiff fails to establish that the venire's racial composition violated equal protection or the Act. Plaintiff failed to object to the venire's racial composition when he saw it and participated in the jury selection process. Plaintiff has not filed an affidavit supporting his speculative assertions of racial bias, and he has not established that African Americans have been substantially underrepresented in jury pools or that the jury selection process was not racially neutral. Disagreeing with the conclusions drawn by the jury, White asserts, without any foundation whatsoever, that the jury and the process by which its members were selected was racially biased. White's assertion is sheer speculation and affords no basis upon which the court may alter or amend the judgment.

### III.

For the foregoing reasons, White is not entitled to judgment as a matter of law, to a new trial, or to alter or amend the judgment. Accordingly, White's motion is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to send a copy of this Order to plaintiff and counsel of record for defendant.

Entered:  March 19, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge